[Cite as *State v. Lu*, 2018-Ohio-5009.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                       Court of Appeals No. WD-18-040

    Appellant                                  Trial Court No. 2017CR0531

v.

Quan Lu                                            **DECISION AND JUDGMENT**

    Appellee                                   Decided:  December 14, 2018

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney,
Thomas A. Matuszak, Chief Assistant Prosecuting Attorney and
David T. Harold, Assistant Prosecuting Attorney, for appellant.

W. Alex Smith, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is a state appeal from the judgment of the Wood County Court of

Common Pleas, which granted appellee's, Quan Lu, motion to suppress evidence that

was seized following a traffic stop.  For the reasons that follow, we affirm.

## I.  Facts and Procedural Background

{¶ 2} On October 19, 2017, appellee was traveling eastbound on the Ohio Turnpike through Wood County, when he was pulled over by Ohio State Highway Patrol Trooper Ann Malone for traveling in the middle lane under the posted speed limit of 70 m.p.h.  Malone requested that a K-9 unit respond to the scene, and the dog presented a final trained response to the presence of illegal narcotics in appellee's vehicle.  A subsequent search of the trunk of the vehicle uncovered over 70 pounds of marijuana.

{¶ 3} On November 2, 2017, the Wood County Grand Jury indicted appellee on one count of possession of drugs in violation of R.C. 2925.11(A) and (C)(3)(f), a felony of the second degree, one count of trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(3)(f), a felony of the second degree, and one count of possessing criminal tools in violation of R.C. 2923.24(A) and (C), a felony of the fifth degree.

{¶ 4} On February 28, 2018, appellee filed a motion to suppress the evidence resulting from the traffic stop.  Appellee argued, inter alia, that the traffic stop was unjustified because there was not sufficient evidence to demonstrate that he was violating any traffic laws.

{¶ 5} The trial court held a hearing on appellee's motion to suppress on May 16, 2018.  At the hearing, Trooper Malone testified that while she was observing eastbound traffic on the turnpike, she noticed appellee's vehicle traveling in the middle lane at 61 m.p.h. in a 70 m.p.h. zone.  As the vehicle passed her location, Malone testified that appellee was looking straight ahead with a rigid posture and his arms were locked out at

2.

the ten o'clock and two o'clock positions on the steering wheel. Malone added that at that time there was a vehicle in the left lane passing appellee's car, and other vehicles in the right lane passing appellee's car. Further, Malone testified that there was a commercial vehicle in the middle lane directly behind appellee.

{¶ 6} Malone then pulled out and began to follow appellee. When she caught up to him, she paced his vehicle at about 65 m.p.h. Video from Malone's dash camera shows appellee's vehicle still in the center lane. A semi-truck is approximately 10 car lengths behind, also in the center lane. In the right lane, approximately eight car lengths behind appellee, is a truck hauling a boat. Appellee is increasing the distance between himself and the truck in the right lane. Ahead of appellee is another vehicle in the center lane, and appellee is catching up to it. The other vehicle eventually merges into the right lane and appellee is passing it. Finally, the video shows throughout this time that a truck is passing appellee in the left lane. Malone then pulls up directly next to appellee on the left, and he slows down to approximately 60 m.p.h. At that point, Malone activates her emergency lights and initiates the traffic stop.

{¶ 7} Malone testified that she found appellee's conduct to be in violation of Ohio Adm.Code 5537-2-09, which applies to traffic on the Ohio Turnpike,[1] and provides that

---

[1] Ohio Adm.Code 5537-2-09 was promulgated by the Ohio turnpike and infrastructure commission under the authority granted in R.C. 5537.16(A). R.C. 5537.16(C) provides that "No person shall violate any such bylaws or rules of the commission." Violation of R.C. 5537.16(C) is a minor misdemeanor on a first offense, and a misdemeanor of the fourth degree for each subsequent offense. R.C. 5537.99(A).

3.

"Where three traffic lanes are provided for the same direction of travel, heavy commercial vehicles and vehicles operated at a rate of speed below the maximum in effect shall drive in the outer lane and shall use the center lane for passing only." Malone testified that appellee's conduct was also in violation of R.C. 4511.25(B), which provides,

(1) Upon all roadways any vehicle or trackless trolley proceeding at less than the prevailing and lawful speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane then available for traffic, and far enough to the right to allow passing by faster vehicles if such passing is safe and reasonable, except under any of the following circumstances:

(a) When overtaking and passing another vehicle or trackless trolley proceeding in the same direction;

(b) When preparing for a left turn;

(c) When the driver must necessarily drive in a lane other than the right-hand lane to continue on the driver's intended route.

{¶ 8} Following Malone's testimony, additional witnesses were called to testify to the events surrounding the search of appellee's vehicle and his subsequent interview. At the close of the hearing, the trial court took the matter under advisement.

{¶ 9} Nine days after the hearing, on May 25, 2018, this court released our decision in *State v. Clark*, 2018-Ohio-2029, 101 N.E.3d 758 (6th Dist.). In *Clark*, we

4.

held that Ohio Adm.Code 5537-2-09 was invalid because it conflicted with R.C. 4511.25(B)(1) in that it improperly added an element of speed. *Clark* at ¶ 37. We reasoned,

> [W]ith regard to what speed triggers the duty to drive in the far-right lane, R.C. 4511.25(B)(1) states: "less than the prevailing and lawful speed of traffic at the time and place and under the conditions then existing[;]" whereas, Ohio Adm.Code 5537-2-09 states: "below the maximum in effect."
>
> These triggering speeds are inconsistent where "the maximum in effect," *id.*, is actually intended to mean the posted speed limit. R.C. 4511.25 does not restrict use of the center lane on a three-lane highway to only traveling at the exact rate indicated by the posted speed limit, because it only requires a driver to be in the far-right lane when he or she is not traveling at a rate of speed comparable to other reasonable and lawful drivers at that time and under those conditions. *Id.* at ¶ 31-32.

{¶ 10} Thereafter, the trial court entered its written decision on June 8, 2018. The trial court found that appellee was approximately 10 car lengths in front of the commercial vehicle behind him, and thus was not impeding the flow of traffic. Further, the trial court found that appellee was going faster than the truck hauling the boat in the right lane, and was covering the distance between himself and the SUV in front of him in

5.

the center lane.  Therefore, the trial court concluded that appellee was travelling at the prevailing speed of traffic, and as such was not in violation of R.C. 4511.25.

{¶ 11} Turning its attention to Ohio Adm.Code 5537-2-09, the trial court referenced *Clark* and noted that while Ohio Adm.Code 5537-2-09 requires that cars in the center lane must be travelling at the speed limit, unless they are in the process of passing or overtaking another vehicle, R.C. 4511.25(B) does not have the same strict speed requirement.  Thus, the court found that the "traffic stop in this case was not based on violation of law nor on a valid or enforceable regulation."

{¶ 12} Finally, in its conclusion, the trial court stated, "[T]here was no violation of either R.C. 4511.25(B) or Ohio Adm.Code 5537-2-09.  [Appellee's] speed and travel within the center lane were lawful."  Therefore, the trial court found that Malone did not have reasonable suspicion to stop [appellee] for either a traffic violation or criminal activity, and granted appellee's motion to suppress.

## II. Assignments of Error

{¶ 13} The state has timely appealed the trial court's June 8, 2018 judgment, and now asserts two assignments of error for our review:

> 1.  The trial court committed reversible error when it concluded that Trooper Malone did not have reasonable and articulable suspicion to stop the Appellee.

6.

2. The trial court committed reversible error when it concluded that Trooper Malone's understanding of the law was inconsistent with *State v. Clark*, and, therefore, determined that the stop was unconstitutional.

### III. Analysis

**{¶ 14}** "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

**{¶ 15}** "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. "[A] traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime," including a traffic violation. *Id.*, citing *Delaware v. Prouse*, 440 U.S. 648, 663,

7.

99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). If the initial traffic stop was unlawful, the evidence and statements obtained from the illegal stop must be excluded as fruits of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 487-488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (The apt question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.").

{¶ 16} In its first assignment of error, the state argues that the trial court erred when it focused exclusively on the video from Malone's dash camera. The state asserts that it never took the position that the offense was recorded on the camera, but rather it points to Malone's testimony that the offense occurred as appellee was approaching her, prior to when her dash camera activated. Further, the state argues that the trial court never found that Malone's testimony lacked credibility. Thus, the state urges us to conclude that there is no competent or credible evidence to support the trial court's finding that Malone lacked reasonable and articulable suspicion of criminal activity.

{¶ 17} Appellee, in response, argues that while the trial court did not specifically state that it did not believe Malone's testimony, it is clear from the court's decision that it found the video evidence to be more compelling.

{¶ 18} Upon our review, we conclude that the trial court did not err when it relied on the dash camera video to support its finding that Malone lacked reasonable and articulable suspicion of criminal activity. At the hearing, Malone testified that as

8.

appellee approached her position, there were vehicles passing him on the left and the right and there was a semi-truck directly behind him. However, in the dash camera video, which begins with Malone rapidly accelerating for about 10 seconds to catch up to appellee, there are not any vehicles in the left or right lanes that are ahead of, yet still close enough to appellee that would suggest that they recently passed him. In addition, the semi-truck that is behind appellee in the center lane is approximately 10 car lengths away, not directly behind him as Malone testified. Furthermore, the video shows a slower moving truck hauling a boat in the right lane, and appellee gaining ground on an SUV in front of him in the center lane, which ultimately moves over so that appellee can pass it. Therefore, we hold that there is competent and credible evidence to support the trial court's finding that appellee's speed and travel within the center lane were lawful, and the trial court did not err when it granted appellee's motion to suppress.

{¶ 19} Accordingly, the state's first assignment of error is not well-taken.

{¶ 20} In its second assignment of error, the state argues that the trial court failed to consider that Malone's good-faith mistake of law does not turn an otherwise constitutional stop into an unconstitutional one. In *Heien v. North Carolina*, ___ U.S. ___, 135 S.Ct. 530, 540, 190 L.Ed.2d 475 (2014), the United States Supreme Court held that because an officer's mistake that the driver's faulty brake light was a violation of North Carolina law was reasonable, there was reasonable suspicion to justify the traffic stop. Here, the state argues that Malone's interpretation of Ohio Adm.Code 5537-2-09 was reasonable because that code section was not determined to be invalid until seven

9.

months after the stop when we issued our decision in *Clark*. Thus, the state concludes that Malone's stop of appellee was still justified.

{¶ 21} However, we do not reach the issue of Malone's good faith mistake of law because the trial court concluded that there was no violation of Ohio Adm.Code 5537-2-09, and the video evidence supports that finding. Ohio Adm.Code 5537-2-09 requires that vehicles traveling below the maximum speed must only use the center lane for passing. In this case, the video shows that appellee is travelling faster than the truck hauling the boat in the right lane, which is only eight car lengths behind, and is gaining ground on and eventually begins to pass the SUV in front of him in the center lane. Thus, there is competent and credible evidence to support the conclusion that appellee is using the center lane to pass the other vehicles. Therefore, even assuming that Malone's interpretation of Ohio Adm.Code 5537-2-09 was correct, appellee still had not committed a violation.

{¶ 22} Accordingly, the state's second assignment of error is not well-taken.

### IV. Conclusion

{¶ 23} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Wood County Court of Common Pleas is affirmed. The state is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                        _____
                                                           JUDGE

Thomas J. Osowik, J.

                                        _____

James D. Jensen, J.                                      JUDGE
CONCUR.

                                        _____
                                                           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.